DENNY'S MARINA, INCORPORATED,
Plaintiff–Appellant,

v.

RENFRO PRODUCTIONS, INCORPORATED; Indianapolis Boat, Sport and Travel Show, Incorporated; Maxine J. Renfro, et al., Defendants–Appellees.

Nos. 93–1168, 93–1302.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 9, 1993.

Decided Nov. 4, 1993.

Rehearing and Suggestion for Rehearing In Banc Denied Dec. 1, 1993.

Michael C. Terrell, William C. Barnard (argued), Gayle A. Reindl, Sommer & Barnard, Indianapolis, IN, Jeffrey S. Zipes, James K. Wheeler, Coots, Henke & Wheeler, Carmel, IN, for Denny's Marina, Inc.

Terrill D. Albright, Robert K. Stanley (argued), Baker & Daniels, James D. Blythe, II, Butler, Brown & Blythe, Daniel B. Altman, Indianapolis, IN, for Renfro Productions, Inc., Indianapolis Boat, Sport and Travel Show, Inc., Maxine J. Renfro and Kevin Renfro.

Timothy L. Wade, Indianapolis, IN, for Central Indiana Marine Dealers Ass'n.

Christopher Kirages, John C. Stark, Stark, Doninger & Smith, Indianapolis, IN, for Brownie's Marine Sales, Inc., and James L. Massey.

Thomas L. Davis, Locke, Reynolds, Boyd & Weisell, Indianapolis, IN, for Indianapolis Boat Co., Inc. and Jack Hummel.

Christopher Kirages, Robert C. Bruner, Stark, Doninger, & Smith, Indianapolis, IN, for G.A. and Group 3, Inc., dba Indianapolis Watersports and Gary A. Story.

James N. Scahill, Schnorr, Good & Scahill, Indianapolis, IN, for Just Add Water Boats, Inc. and Timothy L. Meyer.

Steven A. Holt, Stephen H. Free, Holt, Fleck, & Free, Noblesville, IN, for Lakeview Marina, Inc. and Jeff Lingenfelter.

William P. Wooden (argued), Dale W. Eikenberry, Stephen Akard, Wooden, McLaughlin & Sterner, Indianapolis, IN, for Ted's Aqua Marine, Inc. and Thaddius S. Novicki.

Jeffrey S. Zipes, James K. Wheeler, Coots, Henke & Wheeler, Carmel, IN, William C. Barnard, Sommer & Barnard, Indianapolis, IN, for Fredrick W. Decker and Jerry Brian Ludlow.

Before CUMMINGS, COFFEY and ROVNER, Circuit Judges.

CUMMINGS, Circuit Judge.

This is an appeal from summary judgment granted in favor of the defendants below: The "Renfro Defendants" (Renfro Productions, Inc.; Indianapolis Boat, Sport, and Travel Show, Inc.; Maxine J. Renfro; and Kevin Renfro), "CIMDA" (the Central Indiana Marine Dealers Association), and the "Dealer Defendants" (certain members of CIMDA), in an action brought under the Sherman Antitrust Act, 15 U.S.C. § 1 et seq. and the Clayton Act, 15 U.S.C. §§ 15(a), 26. The Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

In December 1991 Denny's Marina, Inc. ("Denny's"), a marine dealer in Peru, Indiana, filed this suit, alleging that the defendants had excluded Denny's from two Indianapolis boat shows. (See note 3 *infra.*) On defendants' motions for summary judgment the district court held that plaintiff could not invoke the *per se* rule of illegality under Section 1 of the Sherman Act even if it

could demonstrate a horizontal conspiracy to exclude it from the boat shows because it regularly undersold its competitors. Before Denny's could invoke the *per se* presumption of an unreasonable restraint of trade, the court held, it must "make a sufficient showing of a potential market-wide impact" resulting from the defendants' actions. Because Denny's did not make such a showing, the court granted summary judgment in favor of the defendants.[1] We hold that this was error and therefore reverse and remand for trial.

**Facts**

■ Because summary judgment was granted to the defendants, the facts alleged by Denny's and any inferences therefrom must be .construed in its favor. Summary judgment will be denied if a reasonable jury could return a verdict for the plaintiff. *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir.1992).

Denny's is a full-service marine dealer located near Peru, Indiana. It sells fishing boats, motors, trailers and marine accessories in the central Indiana market.[2] The Dealer Defendants are marine dealers in the same market area who compete with Denny's to sell boats to Indiana consumers. CIMDA is a trade association of marine dealers in that area. The Renfro Defendants are producers of two boat shows held annually at the Indiana State Fairgrounds (the "Fairgrounds Shows").[3] The February fairgrounds show (the "Spring Show") originated over 30 years ago. It is one of the top three boat shows in the United States, attracting between 160,-000 and 191,000 consumers annually. The

1. The Renfro Defendants had filed a state law counterclaim against Denny's over which the district court had supplemental jurisdiction. 28 U.S.C. § 1367. Having dismissed all of the federal claims with prejudice, the district court declined to retain jurisdiction over the state law claims, dismissing them without prejudice. Plaintiff agrees that the counterclaim should be reinstated if the antitrust claim is remanded. Reply Brief at 37.

2. The central Indiana market is defined by the parties as extending from Peru and Wabash on the north to Greenwood and Columbus on the south, and from Muncie and Newcastle on the east to Lafayette and Crawfordsville on the west.

This geographic market is said to comprise the area served by Indianapolis news and advertising media. The product market concerns the retail sale of boats and marine accessories to consumers, and the promotion of such sales at boat and recreation shows. In 1989 the total sales of the relevant products in central Indiana was $89 million. R. 114 at 6.

3. The original defendants included International Shows, Inc. and its president Charles Worpell. They also produce an annual boat show in Indianapolis, but Denny's settled its claims against them prior to filing its Amended Complaint below.

October show (the "Fall Show") is smaller and began in 1987. Denny's alleges that the defendants conspired to exclude it from participating in these shows because its policy was to "meet or beat" its competitors' prices at the shows.

Denny's participated in the Fall Show in 1988, 1989, and 1990; it participated in the Spring Show in 1989 and 1990. At all of these shows Denny's was very successful, apparently because it encouraged its customers to shop the other dealers and then come to Denny's for a lower price. During and after the 1989 Spring Show some of the Dealer Defendants began to complain to the Renfro Defendants about Denny's sales methods. After the 1990 Spring Show these Dealer Defendants apparently spent a good part of one CIMDA meeting "vent[ing] their ... frustration" (App. at 15) about Denny's. The complaints to the Renfro Defendants also escalated. As a result, the Renfro Defendants informed Denny's that after the 1990 Fall Show (in which Denny's was contractually entitled to participate) it could no longer participate in the Fairgrounds Shows. This litigation ensued. Denny's seeks compensatory damages to be assessed by a jury, as well as injunctive relief.

## Discussion

■ A successful claim under Section 1 of the Sherman Act requires proof of three elements: (1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in the relevant market; and (3) an accompanying injury. *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1158 (5th Cir.1992), certiorari denied *sub nom. Dillard v. Security Pacific Corp.*, —— U.S. ——, 113 S.Ct. 1046, 122 L.Ed.2d 355; *Wilder Enterprises, Inc. v. Allied Artists Pictures Corp.*, 632 F.2d 1135, 1139 n. 1 (4th Cir.1980); *Ernest W. Hahn, Inc. v. Codding*, 615 F.2d 830, 844 (9th Cir. 1980); cf. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The district court noted that defendants do not dispute the first and third elements of proof.[4] Hence the parties' only argument is whether Denny's has made a sufficient showing of the second element, unreasonable restraint of trade, to withstand defendants' motions for summary judgment.

■ There are two standards for evaluating whether an alleged restraint of trade is unreasonable: the rule of reason and the *per se* rule. See, *e.g., Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 342, 110 S.Ct. 1884, 1893, 109 L.Ed.2d 333; *Federal Trade Commission v. Indiana Federation of Dentists*, 476 U.S. 447, 458, 106 S.Ct. 2009, 2018, 90 L.Ed.2d 445. The nature of the restraint determines which rule will be applied. *Atlantic Richfield Co.*, 495 U.S. at 342, 110 S.Ct. at 1893. Because the restraint alleged by Denny's constitutes a horizontal price-fixing conspiracy, it is *per se* an unreasonable restraint of trade. See, *e.g., Arizona v. Maricopa County Medical Society*, 457 U.S. 332, 348, 102 S.Ct. 2466, 2475, 73 L.Ed.2d 48; *United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 218, 60 S.Ct. 811, 842, 84 L.Ed. 1129, cf. *Federal Trade Commission v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 423–424, 110 S.Ct. 768, 775–76, 107 L.Ed.2d 851.

■ The conspiracy in this case was horizontal because it was "the product of a horizontal agreement." *Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 730 n. 4, 108 S.Ct. 1515, 1523 n. 4, 99 L.Ed.2d 808; accord *United States v. General Motors Corp.*, 384 U.S. 127, 140, 86 S.Ct. 1321, 1328, 16 L.Ed.2d 415 *passim.* It consisted of Denny's competitors and their association. That the conspiracy was joined by the operators of the Fairgrounds boat shows does not transform it into a vertical agreement. See, *e.g., Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 767–768, 104

---

4. The district court assumed, for the purposes of ruling on the defendants' motions for summary judgment, that "(1) the Dealer Defendants and CIMDA conspired to get Denny's out of the Boat Shows because it was a price-cutter; (2) the Renfro Defendants and/or International [International Shows, Inc., another producer of boat

shows] joined the conspiracy, giving it the power to achieve its goals, and Denny's was kicked out; (3) with Denny's gone, the defendants were able to (and did) charge higher prices at the Boat Shows than they could have otherwise...." App. at 24.

S.Ct. 1464, 1472–1473, 79 L.Ed.2d 775; *General Motors*, 384 U.S. at 140, 86 S.Ct. at 1328; *Premier Electrical Construction Co. v. National Electrical Contractors Ass'n*, 814 F.2d 358, 369 (7th Cir.1987); *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 678 F.2d 742, 743–744 (7th Cir.1982).

 Likewise, the conspiracy was to fix prices. Price-fixing agreements need not include "explicit agreement on prices to be charged or that one party have the right to be consulted about the other's prices." *Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46, 48, 111 S.Ct. 401, 402, 112 L.Ed.2d 349; accord *United States v. Capitol Service, Inc.*, 756 F.2d 502, 506 (7th Cir.1985), certiorari denied *sub nom. United Artists Communications, Inc. v. United States*, 474 U.S. 945, 106 S.Ct. 311, 88 L.Ed.2d 288; *Premier Electrical*, 814 F.2d at 368. "Under the Sherman Act a combination formed for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity in interstate or foreign commerce is illegal *per se.*" *Socony–Vacuum Oil*, 310 U.S. at 223, 60 S.Ct. at 844. Concerted action by dealers to protect themselves from price competition by discounters constitutes horizontal price-fixing. *General Motors*, 384 U.S. at 147, 86 S.Ct. at 1332; *Valley Liquors*, 678 F.2d at 743–744. Hence the actions of the Dealer Defendants and CIMDA, joined by the Renfro Defendants, to prevent Denny's from participating in the Boat Shows constitutes a horizontal price-fixing conspiracy notwithstanding the apparent lack of an explicit agreement to set prices.[5]

 So far, the position of this Court is similar to that of the court below. Nevertheless, having essentially found that plaintiff had adduced sufficient evidence of a horizontal price-fixing conspiracy to withstand a motion for summary judgment, the court below refused to apply the *per se* rule that would allow it to conclude that there had been an unreasonable restraint of trade in the relevant market. Instead, before it would apply the *per se* rule the court required plaintiff to demonstrate a substantial potential for impact on competition in the central Indiana market as a whole.[6] Such an exception to the *per se* rule against price-fixing is unwarranted by cited precedent apart from a district court case discussed below. As plaintiff explains, it "simply cannot afford the elaborate market analysis and expert witnesses required to make such a showing."[7]

 As far back as 1940, it has been clear that horizontal price-fixing is illegal *per se* without requiring a showing of actual or likely impact on a market. *Socony–Vacuum Oil*, 310 U.S. at 223–224, 60 S.Ct. at 844–845, and its progeny; Areeda & Haverkamp, *An-*

5. The Renfro Defendants argue that their conduct was not part of a horizontal price-fixing conspiracy but rather was unilateral action taken to ensure that their shows would not be damaged by the plaintiff free-riding on other exhibitors' elaborate displays. The argument is misplaced because there is presently enough evidence of a conspiracy to withstand defendants' motions for summary judgment. At trial, of course, all the defendants are free to argue that they did not conspire against the plaintiff.

6. The requirement imposed by the district court is not the same as the "quick look" described in *General Leaseways v. National Trucking Ass'n*, 744 F.2d 588, 595 (7th Cir.1984). When an otherwise-illegal practice is alleged to be in furtherance of a lawful, pro-competitive end, a "quick look" at the economies of the restraint might be necessary in order to decide whether to apply the *per se* rule. In this case, however, the Dealer Defendants have not alleged a lawful end to which the restraint in question could be said to be ancillary.

7. Plaintiff actually offers this as an explanation of why it elected to pursue only a legal theory that would trigger the *per se* rule and not one that would trigger the so-called rule of reason. The rule of reason requires an inquiry into whether the challenged practices were "unreasonably restrictive of competitive conditions." *Standard Oil Co.*, 221 U.S. 1, 65, 31 S.Ct. 502, 518, 55 L.Ed. 619 (1911); accord *National Society of Professional Engineers v. United States*, 435 U.S. 679, 690, 98 S.Ct. 1355, 1365, 55 L.Ed.2d 637 (1978). Proof of actual impact on competitive conditions can result in both parties presenting extensive economic analysis of the relevant market. It is in part to avoid such excessive costs of litigation that the *per se* rule is applied in cases where the anti-competitive effect of certain practices may be presumed.

 The court below incorrectly required plaintiff to establish a "potential" for impact on competitive conditions before it would apply the *per se* rule. This would effectively require plaintiffs to make a rule of reason demonstration in order to invoke the *per se* rule!

*titrust Law* (1986) § 1510 at 415, 418–419. This is because joint action by competitors to suppress price-cutting has the requisite "substantial potential for impact on competition," *Superior Court Trial Lawyers Ass'n,* 493 U.S. at 433, 110 S.Ct. at 780 (quoting *Jefferson Parish Hospital District No. 2 v. Hyde,* 466 U.S. 2, 16, 104 S.Ct. 1551, 1560, 80 L.Ed.2d 2 (1984)) to warrant *per se* treatment. The district court would require plaintiff in this case to demonstrate a particular potential for impact on the market, when one of the purposes of the *per se* rule is that in cases like this such a potential is so well-established as not to require individualized showings. *Catalano, Inc. v. Target Sales, Inc.,* 446 U.S. 643, 646–647, 100 S.Ct. 1925, 1927–1928, 64 L.Ed.2d 580 (1980); *Broadcast Music, Inc. v. Columbia Broadcasting Systems, Inc.,* 441 U.S. 1, 7–8, 99 S.Ct. 1551, 1556, 60 L.Ed.2d 1. The pernicious effects are conclusively presumed. *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1108 (7th Cir.1984), certiorari denied, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821. (1985).

In support of its holding that Denny's needed to show that the restraint here had a substantial potential for impact on competition in the market as a whole, the district court relied on *Family Boating Center, Inc. v. Washington Area Marine Dealers Association,* 1982–1 Trade Cas. (CCH) ¶ 64,592, 1982 WL 1815 (D.D.C.1982). In that case, the court refused to apply the *per se* rule to a case in which the plaintiff's competitors had engaged in concerted action to exclude it from exhibiting at a boat show. The facts in the opinion are sketchy, but the concerted action is characterized as a group boycott, apparently because the defendants—themselves also competitors of plaintiff Family Boating Centers—were the ones who refused to sell it exhibition space. The *Family Boating Centers* court required the plaintiff to demonstrate likely anti-competitive effects before it would apply the *per se* rule to the boycott. The reasoning of that opinion is contrary to all other authority brought to our attention and therefore will not be followed here.

Since Denny's presented enough evidence for a court and jury to conclude that the defendants engaged in a horizontal conspiracy to suppress price competition at boat shows, their conduct is a *per se* violation of Section 1 of the Sherman Act. *Maricopa Medical Society,* 457 U.S. at 338, 102 S.Ct. at 2470. The district court's grant of summary judgment to defendants is reversed and the case is remanded for trial. The dismissal of the Renfro Defendants' counterclaim is likewise reversed and remanded for further consideration.