Karen F. HICKS and Benny J. Hicks, Plaintiffs,

v.

CHARLES PFIZER & COMPANY INC. aka Charles Pfizer & Company; Pfizer, Ltd. aka Charles Pfizer Ltd.; Pfizer Inc. aka Pfizer, individually and as successor in interest to Charles Pfizer & Company and Pfizer, Ltd.; Wyeth Laboratories, Inc.; Wyeth–Ayerst Laboratories, Inc.; Wyeth Lederle Vaccines; Wyeth–Ayerst Pharmaceuticals; Lederle Laboratories, Inc.; Lederle Laboratories; American Cyanamid Company; American Home Products Corporation; Wyeth aka Wyeth, Inc., individually and as successor in interest to Wyeth Laboratories, Inc., Wyeth–Ayerst Laboratories, Inc., Wyeth–Lederle Vaccines, Wyeth–Ayerst Pharmaceuticals, Lederle Laboratories, Inc., Lederle Laboratories, American Cyanamid Company and American Home Products Corporation; Wyeth Holdings, Inc; and Wyeth Pharmaceuticals, Inc., Defendants.

No. 1:04–CV–201.

United States District Court, E.D. Texas, Beaumont Division.

March 8, 2005.

Thomas Nave Kiehnhoff and Glen W. Morgan of Reaud Morgan & Quinn, Beaumont, TX, for Plaintiffs.

Lisa Gaye Mann, Phillips & Akers, Houston, TX, Karen Renee Bennett, Lawrence Louis Germer, Germer & Gertz, Beaumont, TX, I. Jay Palansky, Roger W. Yoergers, Rachel Zakar, Wilmer, Cutler, Pickering, Hale & Dorr, Washington, DC, Joseph Samuel Cohen, Bierne, Maynard & Parsons Houston, TX, for Defendants Aventis, Lederle Laboratories, Inc., Wyeth Holdings Corp. Wyeth Laboratories Inc. Wyeth · Lederle Vaccines, Wyeth–Ayerst Laboratories, Inc. Wyeth–Ayerst Pharmaceuticals, Inc. American Home Products, Corp., American Cyanamid Co., Lederle Laboratories, Wyeth, Wyeth Pharmaceuticals, Inc., Pfizer, Inc. and Pfizer Ltd.

## MEMORANDUM AND ORDER

CRONE, District Judge.

Pending before the court is Defendants Wyeth Laboratories, Inc., Wyeth–Ayerst Laboratories, Inc., ·Wyeth Lederle Vaccines, Wyeth–Ayerst Pharmaceuticals, Lederle Laboratories, Inc., Lederle Laboratories, American Cyanamid Company, American Home Products Corporation, Wyeth, Wyeth Holdings, Inc., and Wyeth Pharmaceuticals, Inc.'s (collectively, "Wyeth") Motion for Summary Judgment (# 66). Wyeth seeks summary judgment on Plaintiffs Karen Hicks ("Karen") and Benny Hicks's (collectively, "the Hicks") personal injury action asserting claims for products liability, negligence, fraud, and breach of warranty, arising out of Karen's alleged ingestion of doses of oral polio vaccine, which the Hicks assert caused Karen to develop a brain tumor. Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that summary judgment is warranted.

### I. Background

In June 2001, Karen was diagnosed with a brain tumor, which she alleges was caused by oral polio vaccine ("OPV") that she received when she was a child. The Hicks contend that during the manufacturing process, the OPV was contaminated with simian virus 40 ("SV 40") while being cultured in tissue from monkey kidneys. SV 40 has allegedly been linked to brain tumor formation and cancer in humans, and the Hicks maintain that tests on the tissue of Karen's tumor revealed the presence of SV 40 deoxyribonucleic acid.

In 1962, the Jefferson County Medical Society ("Medical Society") sponsored a massive public health campaign, Project XP, to eradicate polio and provided free OPV to any resident over six weeks of age who wished to receive the vaccine. The

Project XP campaign was administered in 1962 in three phases-September 9 (Type I), October 21 (Type III), and December 2 (Type II). Three drops of the OPV were placed on a sugar cube, which the recipient then ingested. Karen claims to have participated in Project XP and to have ingested the three separate sugar cube vaccinations in 1962, when she was approximately five years of age. Karen further alleges that she received one or two more doses of OPV from plastic dispettes at her physician's office in 1968 and 1971.

The Hicks filed suit in the 58th Judicial District Court of Jefferson County, Texas, on February 19, 2004, asserting that one or more of the thirty-three named defendants manufactured the OPV Karen received. On April 8, 2004, the case was removed to federal court on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1332. The court held a scheduling conference on July 9, 2004, and the parties agreed to an interim schedule in order to conduct discovery to determine which, if any, of the named defendants manufactured the vaccine that allegedly caused Karen's brain tumor. The court's order directed the Hicks to disclose all information and documents in their possession "relevant to the product identification issue" and allowed the defendants to depose Karen on the limited issue of product identification. Additionally, the court ordered the defendants to provide all documents in their possession relating to the distribution or sale of polio vaccine in Jefferson County, Texas, during the time periods identified by the Hicks.

As a result of the product identification discovery, the Hicks dismissed from this action all but ten of the defendants. Following the dismissal, the remaining defendants were corporate entities all affiliated, through acquisition or merger, with Wyeth. On February 18, 2005, the Hicks filed a motion for leave to amend their complaint to add Charles Pfizer & Company, Inc., Pfizer, Ltd., and Pfizer Inc. (collectively, "Pfizer"), as defendants in this case. The Hicks had previously moved to dismiss the Pfizer entities without prejudice on January 7, 2005, which the court granted on January 13, 2005. On March 8, 2005, the court granted the Hicks' motion to amend their complaint to add the Pfizer companies as defendants once again.

Wyeth seeks summary judgment on the grounds that, after extensive product identification discovery, the Hicks are unable to identify the manufacturer of the OPV Karen received or to link Wyeth to the OPV delivered to Jefferson County during the relevant time periods. As a consequence, according to Wyeth, the Hicks cannot prove the causation element of their claims.

## II. *Analysis*

### A. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The parties seeking summary judgment bear the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th

Cir.2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir.2002); *Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir.1999).

"A fact is *'material'* if it *'might affect* the outcome of the suit under governing law.'" *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir.2001) (emphasis in original) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505); *see Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir.2001); *Merritt–Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir.1999); *Burgos v. Southwestern Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir.1994). "An issue is *'genuine'* if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan*, 246 F.3d at 489 (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *accord Harken Exploration Co.*, 261 F.3d at 471; *Merritt–Campbell, Inc.*, 164 F.3d at 961. The moving parties, however, need not negate the elements of the nonmovants' case. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)).

Once a proper motion has been made, the nonmoving parties may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir.1999), *cert. denied*, 528 U.S. 1160, 120 S.Ct. 1171, 145 L.Ed.2d 1080 (2000); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075. "[T]he court must

review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348). All the evidence must be construed "in the light most favorable to the nonmoving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir.1996); *see Reeves*, 530 U.S. at 150, 120 S.Ct. 2097; *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *Harken Exploration Co.*, 261 F.3d at 471; *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir.), *cert. denied*, 534 U.S. 951, 122 S.Ct. 347, 151 L.Ed.2d 262 (2001); *Colson*, 174 F.3d at 506. The evidence of the nonmovants is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in their favor. *See Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505); *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003); *Martinez*, 338 F.3d at 411; *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir.), *cert. denied*, 540 U.S. 815, 124 S.Ct. 66, 157 L.Ed.2d 30 (2003); *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir.2002); *Harken Exploration Co.*, 261 F.3d at 471.

Nevertheless, "'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.'" *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (emphasis in original) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1012 (2d Cir.1989)). "If the [nonmoving parties'] theory is ... senseless, no reasonable jury could find in [their] favor, and summary judgment should be granted." *Id.* at 468–69, 112 S.Ct. 2072. The non-

movants' burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Little,* 37 F.3d at 1075; *see Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505; *Wallace,* 80 F.3d at 1047; *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996) (citing *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994)). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown,* 337 F.3d at 541; *see Bridgmon v. Array Sys. Corp.,* 325 F.3d 572, 577 (5th Cir.2003); *Hugh Symons Group, plc v. Motorola, Inc.,* 292 F.3d 466, 468 (5th Cir.), *cert. denied,* 537 U.S. 950, 123 S.Ct. 386, 154 L.Ed.2d 295 (2002).

Summary judgment is mandated if the nonmovants fail to make a showing sufficient to establish the existence of an element essential to their case on which they bear the burden of proof at trial. *See Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548; *Wenner v. Texas Lottery Comm'n,* 123 F.3d 321, 324 (5th Cir.1997), *cert. denied,* 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548.

### B. *Product Identification*

■ The Hicks pleaded this case as one arising in strict liability, negligence, fraud, and breach of warranty. In order to recover under any of these theories, the Hicks must establish the element of causa-tion. They must prove which of the defendants, if any, caused Karen's injury. *See In re Norplant Contraceptive Prods. Litig.,* 215 F.Supp.2d 795, 830 (E.D.Tex.2002) (as with any tort claim, causation is an essential element of a products liability claim); *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason,* 143 S.W.3d 794, 798–99 (Tex.2004) (the elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach); *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 758 (Tex.2001) (plaintiff must have relied on the false misrepresentation and suffered an injury from such reliance); *Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez,* 995 S.W.2d 661, 667 (Tex.1999) (liability for breach of warranty cause of action requires a showing of proximate cause).

Wyeth argues that the Hicks have not established the causation element of their claims because they have not produced any evidence that Wyeth manufactured or distributed the OPV Karen allegedly ingested during the 1962 Project XP campaign or the OPV she purportedly received in 1968 and 1971. As part of their response to Wyeth's motion, the Hicks furnished the court with copies of newspaper articles from the *Beaumont Journal* and the *Beaumont Enterprise,* which covered the Medical Society's decision to launch Project XP in the summer and fall of 1962. An article from the *Beaumont Journal* dated July 20, 1962, states that bids to supply the OPV (Types I, II and III) for Project XP had been requested from the "Pfizer, Lederle and Wyeth laboratories." Further, on July 31, 1962, the *Beaumont Journal* ran an article stating that "the Jefferson County Medical Society's Committee on the polio mass immunization program has named the Wyeth pharmaceutical house of Philadelphia to furnish the

Sabin vaccine for the program to begin here on September 9."

Wyeth, however, countered with additional articles from August 1962 editions of the *Beaumont Journal* and the *Beaumont Enterprise*, which both reported that Wyeth's vaccine would not be used for the three-stage Project XP campaign to begin on September 9, 1962. On August 9, 1962, the *Beaumont Enterprise* announced the dates of administration for all three types of OPV and reported that notwithstanding the "[i]nitial plans" to obtain the OPV for Project XP from Wyeth, the Medical Society had cancelled its order with Wyeth, due to Wyeth's inability to furnish Type I of the vaccine, and had "purchased the vaccine from Pfizer Laboratories of New York."

The Hicks subsequently submitted additional briefing and documentation regarding OPV and Project XP. Included is a copy of an article from the *Beaumont Enterprise* dated October 19, 1962, announcing that "[v]accine for 250,000 doses of Type III arrived at Jefferson County Airport Tuesday night [October 16, 1962] in preparation for Sunday's [October 21, 1962] drive," but there is no mention of the manufacturer of the vaccine. On October 29, 1962, the *Beaumont Enterprise* reported that a total of 182,341 persons in Jefferson County had taken the Type III vaccine during the month of October, compared to 226,440 persons who had received the Type I vaccine in September. The Hicks also provided a copy of a clipping from the *Beaumont Enterprise* dated November 27, 1962, stating that the Type II oral Sabin vaccine will be offered the following Sunday [December 2, 1962] at fifty area schools. The article notes that "[t]he vaccine will arrive at 2:26 p.m. today. It was ordered from Charles Pfizer Laboratories of New York and will be kept in cold storage at the Flying Chef Restaurant at the airport until Sunday." Neither party has proffered any evidence regarding the supplier of the OPV allegedly administered to Karen in her physician's office in 1968 and 1971.

Under the Federal Rules of Evidence, newspaper articles are self-authenticating. *See* FED. R. EVID. 902(6); *Woolsey v. National Transp. Safety Bd.*, 993 F.2d 516, 520 (5th Cir.1993), *cert. denied*, 511 U.S. 1081, 114 S.Ct. 1829, 128 L.Ed.2d 459 (1994); *Perez v. Alcoa Fujikura, Ltd.*, 969 F.Supp. 991, 998 (W.D.Tex.1997). Furthermore, because the articles from the *Beaumont Journal* and the *Beaumont Enterprise* are more than twenty years old, they fall within the "ancient documents" exception to the hearsay rule. *See* FED. R. EVID. 803(16); *Dallas County v. Commercial Union Assurance Co.*, 286 F.2d 388, 396 (5th Cir.1961) (contents of fifty-eight-year-old newspaper article admitted under the "ancient documents" exception to the hearsay rule).

■ "A fundamental principle of traditional products liability law is that the plaintiff must prove that the defendants supplied the product which caused the injury." *Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex.1989); *see In re Fibreboard Corp.*, 893 F.2d 706, 711 (5th Cir. 1990). "It is not enough that the seller merely introduced products of similar design and manufacture into the stream of commerce." *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex.1996). The only evidence the parties have produced directly addressing the identity of the manufacturer of the OPV Karen allegedly ingested during the 1962 Project XP campaign are the Beaumont newspaper articles from 1962. The validity of the information contained in the articles dated July 1962, indicating that Wyeth was to supply the OPV for Project XP, was subsequently discounted by the evidence from the newspaper articles published just weeks later

and into the fall of 1962, which state that the OPV had been purchased from Pfizer.

The only other evidence proffered by the Hicks arguably linking Wyeth to any polio immunization program is a product distribution summary initially produced by Wyeth. The summary reflects that Wyeth distributed over seven million doses of OPV, divided among the three types of vaccine, in the State of Texas from July through December 1962, with significantly larger quantities sent in July, September, October, and December, months which coincide, in part, with the dates of Project XP. Nevertheless, the summary reveals that in September 1962 (corresponding with the September 9, 1962, Project XP inoculation date for Type I), Wyeth sent merely 12,040 doses of Type I vaccine to Texas; in October 1962 (corresponding with the October 21, 1962, Project XP inoculation date for Type III), Wyeth sent 0 doses of Type III vaccine to Texas; and in November 1962 (corresponding with the December 2, 1962, Project XP inoculation date for Type II), Wyeth sent just 2,890 doses of Type II vaccine to Texas. These are clearly insufficient quantities to fill the mass immunization requirements of Project XP. Moreover, the product distribution summary does not show the specific counties in Texas to which Wyeth sent the vaccine.

The newspaper articles provided by both Wyeth and the Hicks mention that other counties in the state, which had a total population of approximately ten million at the time, including Harris and Orange County, were conducting polio vaccine campaigns around the same time as Project XP. In fact, according to an article from the *Houston Chronicle* dated September 20, 1962, 1,020,601 persons received Type III vaccine supplied by Wyeth in Harris County on September 9, 1962, and another immunization date was set for October 14, 1962, at which time Wyeth would again supply the Type III vaccine. Therefore, the fact that Wyeth sent millions of doses of OPV to Texas in 1962 does not mean that any of those doses ended up in Jefferson County, much less in Karen's body. Indeed, the only evidence provided by either party as to the identity of the company that actually supplied the OPV used in Project XP, and, thus, the OPV allegedly ingested by Karen, are the *Beaumont Journal* and *Beaumont Enterprise* articles stating that the Medical Society had purchased the OPV from Pfizer.

The Hicks concede that Pfizer was identified in the Beaumont newspapers as the supplier of both the Type I and Type II vaccines administered in Jefferson County in 1962, but they appear to suggest that Wyeth may have supplied the Type III OPV. In Paragraph 30 of Plaintiffs' Response to Defendants' Reply to Plaintiffs' Supplemental Response to Defendants' Motion for Summary Judgment, the Hicks state: "As discussed above, Pfizer was identified as the manufacturer of the Type I OPV administered in September 1962 and again with respect to the Type II OPV administered in December 1962. As discussed above, no manufacturer was identified in the local press with the Type III OPV administered in October 1962." The mere lack of information regarding the identity of the supplier of the Type III vaccine, however, provides no basis for the court or for a jury to infer that Wyeth furnished the vaccine. In fact, the product distribution summary proffered by and relied upon by the Hicks shows the number of doses of Type III OPV shipped by Wyeth into Texas in October 1962 was "0." This evidence refutes the notion that Wyeth was the supplier of the 250,000 doses of Type III OPV that arrived at the Jefferson County Airport on October 16, 1962, as reported in the *Beaumont Enterprise,* in preparation for the October 21, 1962, administration of the vaccine in Jef-

ferson County. Moreover, previous newspaper accounts indicate that the Medical Society had purchased all the vaccine from Pfizer.

"[U]nder Texas substantive law causation of plaintiff's injury by defendant's product and plaintiff's resultant damages must be determined as to 'individuals, not groups.'" *Cimino v. Raymark Indus.*, 151 F.3d 297, 313 (5th Cir.1998) (citing *In re Fibreboard*, 893 F.2d at 711). Like the courts in *Cimino and Fibreboard*, this court is bound to apply Texas law as it currently exists and will not create "'innovative theories of recovery or defense' under local law." *Id.* at 314 (quoting *Johnson v. Sawyer*, 47 F.3d 716, 726 (5th Cir. 1995)). Texas state courts have not adopted the theories of alternative liability, concert of action, enterprise liability, or market share liability. *See id.; Spring Branch Indep. Sch. Dist. v. NL Indus.*, —— S.W.3d ——, ——, No. 01–02–01006–CV, 2004 WL 1404036, at *4 (Tex.App.—Houston [1st Dist.] June 24, 2004, no pet. h.) (affirming trial court ruling disposing of all claims against paint manufacturers for lack of product identification, including claims for strict liability for design and marketing defects, negligence, and fraud).

To establish Wyeth's liability, therefore, it is not enough for the Hicks merely to show that Wyeth distributed OPV in the State of Texas in 1962. Instead, the Hicks must adduce evidence that Wyeth actually supplied the OPV that Karen ingested and which allegedly caused her injury. *See id.; accord Cimino*, 151 F.3d at 313. In construing all the evidence in the light most favorable to the Hicks, it is apparent that there is no evidence in the record from which it could be inferred that Wyeth manufactured or supplied the OPV Karen purportedly ingested in 1962 during Project XP or subsequently at her physician's office in 1968 and 1971. Consequently, as to Wyeth, the Hicks have not produced suffi-cient evidence to establish causation, an element essential to each of their claims, on which they bear the burden of proof at trial. Hence, in the absence of a genuine issue of material fact, summary judgment is mandated in favor of Wyeth.

### III. *Conclusion*

Accordingly, Wyeth's Motion for Summary Judgment is GRANTED. The Hicks fail to present a claim that warrants relief against Wyeth. There remain no material facts in dispute, and Wyeth is entitled to judgment as a matter of law.