IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 12, 2008

Charles R. Fulbruge III
Clerk

No. 06-40703

SARITA I. GARCIA,

Plaintiff-Appellant,

v.

PFIZER INC.; WYETH; WYETH HOLDINGS CORP.; WYETH
PHARMACEUTICALS INC.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:04-cv-00112

Before DAVIS, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

Sarita I. Garcia ("Garcia") brought this action against Defendants Pfizer,
Inc., Wyeth, Wyeth Holdings Corp., and Wyeth Pharmaceuticals Inc. alleging
that she received a dose of oral polio vaccine manufactured by Defendants that
was contaminated with simian virus 40 ("SV40"), and that the ingestion of the
vaccine caused her to develop meningioma.  The district court granted summary
judgment to Defendants on the basis that Garcia was unable to adequately

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

identify which Defendant manufactured the vaccine that she received. Garcia appeals this decision, as well as the district court's subsequent dismissal of her motion for reconsideration. Finding no reversible error, we affirm.

I.

In 1992, Garcia was diagnosed with a meningioma, a tumor of the protective membrane around the brain and spinal cord. On February 20, 2004, Garcia filed suit in Texas state court, alleging that her tumor was caused by a dose of oral polio vaccine ("OPV") that she received in 1970. She contends that, during the manufacturing process, the OPV was contaminated with SV40 while being cultured in tissue from monkey kidneys. SV40 has allegedly been linked to brain tumor formation and cancer in humans.

Garcia claims to have received a single dose of OPV at the Robstown Health Clinic on July 15, 1970, at the same time her daughter, Luanna, was inoculated. The vaccination card produced by Garcia shows that on July 15, 1970, Luanna received a polio vaccine from the Robstown clinic. The name of the manufacturer of the OPV administered to Luanna does not appear on the card and the doctor who signed the clinic card is now deceased. There is no vaccination card for Garcia.

Because Garcia did not know which company made or distributed the vaccine she allegedly received, she sued every manufacturer of an oral or injected polio vaccine that had been approved in the United States in the past fifty years. Defendants removed the case to the United States District Court for the Southern District of Texas on March 19, 2004. At the outset, the parties agreed to focus on product identification and the district court allowed limited discovery as to this issue. After some initial discovery, Garcia filed an amended complaint, dismissing her case as to all defendants except Defendants Pfizer,

Inc., Wyeth, Wyeth Holdings Corp., and Wyeth Pharmaceuticals Inc.[1]– the only entities licensed to manufacture and distribute the vaccine during the relevant time period.[2]

In August 2005, after thirteen months of product identification discovery, Defendants moved for summary judgment. Defendants argued that Garcia could not prove which vaccine she received when she was allegedly vaccinated on July 15, 1970. The district court held two hearings on the motion and requested supplemental briefing on the availability of "market share" liability under Texas law. On March 14, 2006, the district court granted Defendants' motion for summary judgment without issuing a written opinion. In the order dismissing the case, the district court stated, "[a]fter extensive review the Court finds that the plaintiff has failed to produce evidence that is sufficient to identify the polio vaccine allegedly ingested by the plaintiff with the specificity required under Texas law."

Garcia filed a motion for reconsideration on March 24, 2006. In that motion, Garcia raised for the first time an "alternative liability" theory based on § 433B of the Restatement of Torts. On November 20, 2006, the district court denied Plaintiff's motion for reconsideration, noting that she was merely rehashing her previous arguments and that both Texas and the Fifth Circuit had rejected the theory of alternative liability.

Garcia filed a notice of appeal on April 19, 2006.[3]

---

[1] Wyeth Pharmaceuticals Inc. is the successor to Wyeth Laboratories Inc., an OPV manufacturer. Wyeth Holdings Corp. is the successor to American Cyanamid Company, which made OPV through its Lederle Laboratories division ("Lederle"). Defendant-Appellee Wyeth is a parent company.

[2] OPV has a shelf life of 12 months. Thus, the vial of OPV from which Garcia was allegedly vaccinated could have been manufactured and delivered to the Robstown Clinic between July 15, 1969 and July 15, 1970.

[3] On appeal, Garcia contends only that Wyeth Laboratories Inc. and Pfizer produced the vaccine that injured her. She no longer argues that Lederle produced the dose of OPV;

II.

This court reviews de novo a district court's grant of summary judgment, applying the same legal standards as the district court.  Allstate Ins. Co. v. Disability Servs. of the Sw. Inc., 400 F.3d 260, 262-63 (5th Cir. 2005).  Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the record discloses that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  FED R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Defendants, the moving parties, bore the initial burden of "informing the District Court of the basis for [their] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which [they] believe[] demonstrate the absence of a genuine issue of material fact." Celotex, 417 U.S. at 323.  Once Defendants' burden was met, the burden shifted to Garcia, the nonmovant, to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."  Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to their case on which they bear the burden of proof at trial.  See Nebraska v. Wyoming, 507 U.S. 584, 590 (1993).

III.

As with any tort claim, causation is an essential element of a products liability claim.  See, e.g., IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v.

---

therefore we construe her appeal as only appealing the dismissal of Wyeth, Wyeth Pharmaceuticals Inc.,and Pfizer.

Mason, 143 S.W. 3d 794, 798-99 (Tex. 2003). Under Texas products liability law, every plaintiff is required to establish that the product that caused an injury had been manufactured, designed, or distributed by the defendant whom he or she sues. Gaulding v. Celotex Corp., 772 S.W. 2d 66, 68 (Tex. 1989) ("A fundamental principle of traditional products liability law is that the plaintiff must prove that the defendants supplied the product which caused the injury."); In re Fibreboard Corp., 893 F.2d 706, 711 (5th Cir. 1990) (same). Texas law requires "evidence of probative force" that the defendant manufactured or distributed the injuring product. Welch v. Coca-Cola Bottlers' Assoc., 380 S.W. 2d 26, 30 (Tex. Civ. App. 1964). "It is not enough that the seller merely introduced products of similar design and manufacture into the stream of commerce." Spring Branch Indep. Sch. Dist. v. NL Industs. Inc., No. 01-02-01106 CV, 2004 WL 1404036 at *8 (Tex. App. 2004). Therefore, to survive a motion for summary judgment, it was not sufficient for Garcia to introduce evidence that the Defendants distributed OPV in Texas in 1970. Instead, she must have adduced evidence that Defendants supplied the specific doses that allegedly caused her injury. See Firestone Steel Prods. Co. v. Barajas, 927 S.W.2d 608, 614 (Tex. 1996) ("It is not enough that the seller merely introduced products of similar design and manufacture into the stream of commerce."); Cimino v. Raymark Indus., 151 F.3d 297, 313 (5th Cir. 1998) ("Under Texas substantive law causation of plaintiff's injury by defendant's product and plaintiff's resultant damages must be determined as to individuals, not groups."). On appeal, Garcia argues that the district court erred in granting summary judgment because she satisfied this burden.

It is undisputed that Garcia does not know which company made or distributed the vaccine that she allegedly received. As noted above, she does not have a vaccination card and the name of the vaccine manufacturer is not provided on her daughter's vaccination card. Further, there are no records indicating from what source the Robstown Clinic obtained its OPV between July

15, 1969 and July 15, 1970.   The Robstown Clinic was one of several neighborhood clinics run by the Nueces County Health Department, now known as the Nueces County Health District ("the District").  Historically, the District acquired its vaccines from multiple sources, including the Texas State Department of Health ("the State"), the U.S. Centers for Disease Control ("the CDC"), and directly from the manufacturers.  The District has no record of which manufacturer produced the OPV vaccines given in 1970, nor are there any records indicating who was vaccinated by the Robstown Clinic.  Garcia attempted to obtain shipping records from the State and the CDC, but was unsuccessful.  None of the Defendants have complete OPV distribution records for the relevant time period, but records produced by Wyeth Laboratories indicate that Wyeth shipped approximately 350,000 doses of OPV to the State between January 20, 1970 and August 3, 1970.

Nonetheless, Garcia argues that the unrebutted direct evidence, as well as the permissible inferences derived therefrom, sufficiently identified Wyeth Laboratories and Pfizer as the manufacturer of the vaccine given to her.

In opposition to Defendants' motion for summary judgment, Garcia offered the deposition of Dr. M.S. Dickerson, taken in December 1971 as part of an unrelated lawsuit, Reyes v. Wyeth.[4]  Dr. Dickerson was then the Director of the Communicable Diseases Services Section of the State, and was the physician directly in charge of the State Immunization Program.  This program was one source of vaccines for county health clinics such as the Robstown Clinic.  In his deposition, Dr. Dickerson testified that the State would reorder OPV before the available inventory of the vaccine dropped below 20,000 doses.  He also testified

---

[4] In that case, Anita Reyes developed polio two weeks after she received a dose of Wyeth Laboratories' oral polio vaccine in May of 1970.  She brought suit against Wyeth alleging that she wasn't warned of any danger from the vaccine, and a jury found in her favor. The jury verdict was affirmed by the Fifth Circuit.  See Reyes v. Wyeth Labs., 498 F.3d 1264 (5th Cir. 1974).

6

that it was the State's policy to distribute the vaccine in the order it was received by the manufacturer. This "first-in first-out" policy was designed to ensure the vaccine was administered within its one-year shelf life. At his deposition, Dr. Dickerson produced a number of records, including: State purchase orders showing purchases of OPV from April 1969 through June 1971; a chart showing, by month, the amounts of OPV distributed by the State to various Texas counties from January 1970 through December 1970; and records of 1970 OPV shipments to Cameron County.

Garcia argues that the purchase orders produced by Dr. Dickerson, combined with his testimony about the State's inventory policies and first-in first-out policy, compels the conclusion that Garcia received a dose of OPV produced by Wyeth and contaminated with SV40. Specifically, she argues that the state only ordered new OPV when its inventory was down to 20,000 doses and that the State's first-in first-out distribution policy meant that the doses of OPV were administered in the order received. She states that the purchase orders show that between January 1, 1970 and July 31, 1970, the State shipped 15,000 doses of OPV to Nueces County. Therefore, Garcia argues, it can be inferred that there was enough OPV going to Nueces County to prove the single dose administered to Garcia on July 15, 1970 and that the OPV sent to Nueces County was being consumed and replacement was necessary. On December 23, 1969 and May 27, 1970, the State executed a new purchase order with Wyeth Laboratories. Garcia argues that it can be inferred that both of these purchase orders were executed because available stock had been depleted. Finally, on September 11, 1970, the State executed a purchase order for OPV from Lederle. Garcia argues that therefore it can be inferred that the stock of vaccine had become depleted sometime between May 27, 1970 and September 11, 1970, and that because Garcia received her vaccine in the interval, she must have received a dose of the Wyeth vaccine. Garcia also offered evidence that in 1970, Pfizer

Ltd. produced the monovalent pools that Wyeth Laboratories used to make its OPV. Further, Garcia introduced some evidence regarding the contamination of Pfizer's monovalent pools with SV40. In sum, Garcia argues that, given the distribution policies and shipping records, the State only purchased and distributed Wyeth vaccines during the first half of 1970, and thus it would be reasonable for the jury to infer that the vaccine administered to her was produced by Wyeth and Pfizer.

We agree with Defendants that, under Texas law, Garcia did not present sufficient evidence that Wyeth and Pfizer produced the vaccine that allegedly caused her injury to survive summary judgment. Garcia argues that she met her burden through circumstantial evidence and the inferences drawn from that evidence. However, "a nonmoving party's inferences must be reasonable in order to reach the jury." Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 467 (1992). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." Nuwer v. Mariner Post-Acute Network, 332 F.3d 310, 313-14 (5th Cir. 2003).

Defendants rebutted many of the factual predicates underlying Garcia's argument that Wyeth must have produced the vaccine she ingested. Specifically, Defendants showed that: (1) during the first half of 1970, the State delivered to the counties more doses of OPV than it purchased during that time; (2) during the first half of 1970, the State delivered to another county doses of vaccine produced by all three manufacturers; and (3) the counties and individual clinics both purchased vaccine from multiple sources other than the State. Looking at the evidence as a whole, it may be reasonable to infer that during the first half of 1970, Wyeth produced OPV and sold a substantial number of doses of the vaccine to the State, that these doses were in turn distributed to the counties. However, under Texas law, it is not sufficient for Garcia to show that

Wyeth distributed OPV to the State during the period in which she received her vaccine. See Hicks v. Charles Pfizer & Co., 368 F. Supp. 2d 628, 635 (E.D. Tex. 2005) (dismissing claims against Wyeth because it is insufficient under Texas law to show that Wyeth was one of three vaccine manufacturers); Bayless v. United States Rentals, 1999 Tex. App. LEXIS 3406 (Tex. App. 1999) (affirming grant of summary judgment to defendant because the summary judgment proof showed, at most, that U.S. Rentals supplied one of the two scaffolds in use at the time of the accident). Instead, Garcia must produce evidence that the Defendants actually supplied the OPV that she ingested and which allegedly caused her injury. See Cimino, 151 F.3d at 313 ("Under Texas substantive law causation of plaintiff's injury by defendant's product and plaintiff's resultant damages must be determined as to individuals, not groups."). Even if this Court were to infer that it is most likely that Wyeth produced the vaccine given to Plaintiff, Texas law would not permit liability. Texas law does not permit a plaintiff to prove product liability by contending that the product was most likely from the dominant supplier and Texas courts have rejected liability in similar circumstances. See Welch , 380 S.W. 2d at 26 (holding that evidence on product identification was not sufficient where evidence established that defendant purchased and served Coca-Cola in the area and that it was not normal for other bottling companies to sell in that area); Spring Branch, 2004 WL 1404036 at *8 (rejecting liability even though defendant was "virtually the sole supplier").

The evidence produced by Garcia is simply insufficient to compel the conclusion that Wyeth definitely produced the vaccine that was allegedly administered to her. While proving causation may be difficult, that does not excuse the plaintiff from introducing some evidence of causation. Schaefer v. Tex. Employer Ins. Assoc., 612 S.W. 2d 199, 205 (Tex. 1980). Because Garcia did not produce sufficient evidence to demonstrate a genuine issue of material fact as to whether Defendants produced the vaccine that allegedly caused her injury,

the district court's grant of summary judgment to the Defendants was not in error.

IV.

Garcia also argues that the district court erred in denying her motion for reconsideration. We review the denial of a motion for reconsideration for abuse of discretion. Ellis v. Chevron U.S.A., Inc., 650 F.2d 94, 97 (5th Cir. 1981).

In her motion for reconsideration, Garcia raised for the first time an "alternative liability" theory based on § 433B of the Restatement of Torts. Under that section, "[w]here the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm." RESTATEMENT (SECOND) OF TORTS § 433B(3) (1965). Garcia argued that it was unfair to dismiss the case because § 433B(3) would apply after a finding of liability and that additional discovery was needed.

This Court has previously declined, under Texas law, to recognize § 433(B)'s principle of alternative liability, stating:

> We know of no Texas appellate decision which . . . has even approved of in dicta, much less adopted, the theor[y] of "alternative liability." . . . We have long followed the principle that we will not create innovative theories of recovery or defense, under local law, but will rather merely apply it as it currently exists.

Cimino, 151 F.3d at 314. Garcia points to no change in Texas law since our decision in Cimino. Because Texas has not yet recognized the theory of "alternative liability" encompassed in § 433B, the district court did not err in denying Garcia's motion for reconsideration.

V.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to Defendants and AFFIRM the district court's denial of Garcia's motion for reconsideration.