PALMER ET AL. *v.* BRG OF GEORGIA, INC., ET AL.

No. 89–1667.   Decided November 26, 1990

PER CURIAM.

In preparation for the 1985 Georgia Bar Examination, petitioners contracted to take a bar review course offered by respondent BRG of Georgia, Inc. (BRG).   In this litigation they contend that the price of BRG's course was enhanced by reason of an unlawful agreement between BRG and respondent Harcourt Brace Jovanovich Legal and Professional Publications (HBJ), the Nation's largest provider of bar review

materials and lecture services. The central issue is whether the 1980 agreement between respondents violated § 1 of the Sherman Act.[1]

HBJ began offering a Georgia bar review course on a limited basis in 1976, and was in direct, and often intense, competition with BRG during the period from 1977 to 1979. BRG and HBJ were the two main providers of bar review courses in Georgia during this time period. In early 1980, they entered into an agreement that gave BRG an exclusive license to market HBJ's material in Georgia and to use its trade name "Bar/Bri." The parties agreed that HBJ would not compete with BRG in Georgia and that BRG would not compete with HBJ outside of Georgia.[2] Under the agreement, HBJ received $100 per student enrolled by BRG and 40% of all revenues over $350. Immediately after the 1980 agreement, the price of BRG's course was increased from $150 to over $400.

On petitioners' motion for partial summary judgment as to the § 1 counts in the complaint and respondents' motion for summary judgment, the District Court held that the agree-

---

[1] Section 1 of the Sherman Act, 26 Stat. 209, as amended and set forth in 15 U. S. C. § 1, provides in relevant part:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

We do not reach the other claims alleged in petitioners' nine-count complaint, including violations of § 2 of the Sherman Act, 15 U. S. C. § 2.

[2] The 1980 agreement contained two provisions, one called a "Covenant Not to Compete" and the other called "Other Ventures." The former required HBJ not to "directly or indirectly own, manage, operate, join, invest, control, or participate in or be connected as an officer, employee, partner, director, independent contractor or otherwise with any business which is operating or participating in the preparation of candidates for the Georgia State Bar Examination." Plaintiffs' Motion for Partial Summary Judgment, Attachment E, p. 10. The latter required BRG not to compete against HBJ in States in which HBJ currently operated outside the State of Georgia. *Id.*, at 15.

ment was lawful. The United States Court of Appeals for the Eleventh Circuit, with one judge dissenting, agreed with the District Court that *per se* unlawful horizontal price fixing required an explicit agreement on prices to be charged or that one party have the right to be consulted about the other's prices. The Court of Appeals also agreed with the District Court that to prove a *per se* violation under a geographic market allocation theory, petitioners had to show that respondents had subdivided some relevant market in which they had previously competed. 874 F. 2d 1417 (1989).[3] The Court of Appeals denied a petition for rehearing en banc that had been supported by the United States. 893 F. 2d 293 (1990).[4]

In *United States* v. *Socony-Vacuum Oil Co.*, 310 U. S. 150 (1940), we held that an agreement among competitors to engage in a program of buying surplus gasoline on the spot market in order to prevent prices from falling sharply was unlawful, even though there was no direct agreement on the actual prices to be maintained. We explained that "[u]nder the Sherman Act a combination formed for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity in interstate or foreign commerce is illegal *per se*." *Id.*, at 223. See also *Catalano, Inc.* v. *Target Sales, Inc.*, 446 U. S. 643 (1980) *(per curiam); National Society of Professional Engineers* v. *United States*, 435 U. S. 679 (1978).

---

[3] In dissent, Judge Clark explained that in his view HBJ and BRG were capable of engaging in *per se* horizontal restraints because they had competed against each other and then had joined forces. He believed the District Court's analysis was flawed because it had failed to recognize that the agreements could be price-fixing agreements even without explicit reference to price and because it had failed to recognize that allocation, rather than subdivision, of markets could also constitute a *per se* antitrust violation.

[4] The United States, as *amicus curiae*, had urged the court to adopt the views of the dissent.

The revenue-sharing formula in the 1980 agreement between BRG and HBJ, coupled with the price increase that took place immediately after the parties agreed to cease competing with each other in 1980, indicates that this agreement was "formed for the purpose and with the effect of raising" the price of the bar review course. It was, therefore, plainly incorrect for the District Court to enter summary judgment in respondents' favor.[5] Moreover, it is equally clear that the District Court and the Court of Appeals erred when they assumed that an allocation of markets or submarkets by competitors is not unlawful unless the market in which the two previously competed is divided between them.

In *United States* v. *Topco Associates, Inc.*, 405 U. S. 596 (1972), we held that agreements between competitors to allocate territories to minimize competition are illegal:

> "One of the classic examples of a *per se* violation of § 1 is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition. . . . This Court has reiterated time and time again that '[h]orizontal territorial limitations . . . are naked restraints of trade with no purpose except stifling of competition.' Such limitations are *per se* violations of the Sherman Act." *Id.*, at 608 (citations omitted).

The defendants in *Topco* had never competed in the same market, but had simply agreed to allocate markets. Here, HBJ and BRG had previously competed in the Georgia market; under their allocation agreement, BRG received that market, while HBJ received the remainder of the United States. Each agreed not to compete in the other's territories. Such agreements are anticompetitive regardless of whether the parties split a market within which both do busi-

---

[5] See *Anderson* v. *Liberty Lobby, Inc.*, 477 U. S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor").

ness or whether they merely reserve one market for one and another for the other.[6] Thus, the 1980 agreement between HBJ and BRG was unlawful on its face.

The petition for a writ of certiorari is granted, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.[7]

*It is so ordered.*

JUSTICE SOUTER took no part in the consideration or decision of this case.

JUSTICE MARSHALL, dissenting.

Although I agree that the limited information before us appears to indicate that the Court of Appeals erred in its decision below, I continue to believe that summary dispositions deprive litigants of a fair opportunity to be heard on the merits and significantly increase the risk of an erroneous decision. See *Smith* v. *Ohio*, 494 U. S. 541, 544 (1990) (MARSHALL, J., dissenting); *Pennsylvania* v. *Bruder*, 488 U. S. 9, 11–12 (1988) (MARSHALL, J., dissenting); *Rhodes* v. *Stewart*, 488 U. S. 1, 4–5 (1988) (MARSHALL, J., dissenting); *Buchanan* v. *Stanships, Inc.*, 485 U. S. 265, 269–270 (1988)

---

[6] See *Arizona* v. *Maricopa County Medical Society*, 457 U. S. 332, 344, n. 15 (1982) ("division of markets" is *per se* offense).

[7] In 1982, in connection with the settlement of another lawsuit, respondents made certain changes in their arrangement. Because the District Court found that the 1980 agreement did not violate § 1 of the Sherman Act, it did not address whether the 1982 modified agreement constituted a withdrawal from, or abandonment of, the conspiracy. In *United States* v. *Kissel*, 218 U. S. 601 (1910), we held that antitrust conspiracies may continue in time beyond the original conspiratorial agreement until either the conspiracy's objectives are abandoned or succeed. *Id.*, at 608–609. Thus, it is an unsettled factual issue whether the conspiratorial objectives manifest in the 1980 agreement between HBJ and BRG have continued in spite of the 1982 modifications.

(MARSHALL, J., dissenting); *Commissioner* v. *McCoy*, 484 U. S. 3, 7–8 (1987) (MARSHALL, J., dissenting). I therefore dissent from the Court's decision today to reverse summarily the judgment below.