Edward C. BURNS, an individual d/b/a
Ed Burns Photography, Plaintiff,

v.

COVER STUDIOS, INC., a Pennsylvania
Corporation, and Windber Area School
District, a Pennsylvania municipal cor-
poration, Defendants.

Civ. A. No. 92–255J.

United States District Court,
W.D. Pennsylvania.

Feb. 17, 1993.

W. Patrick James, Johnstown, PA., for Edward C. Burns.

David C. Klementik, Windber, PA., for Cover Studios, Inc.

Samuel D. Clapper, Barbera & Barbera, Somerset, PA., Andrew J. Leger, Jr., Maiello, Andrews & Price, Pittsburgh, PA., for Windber Area and Forest Hills School Districts.

### MEMORANDUM ORDER

D. BROOKS SMITH, District Judge.

Plaintiff Edward C. Burns, a commercial photographer in Cambria County, filed a complaint alleging that the defendants, a competitor and two school districts, were violating federal antitrust laws and Pennsylvania common law. The defendants, Cover Studios, Inc., Windber Area School District, and Forest Hills School District, filed motions to dismiss the complaint for failure to state a claim. Fed.R.Civ.P. 12(b)(6). Argument on the motions was held on January 29, 1993. Because it does not appear that plaintiff states a claim for violation of the federal antitrust laws or of state common law, the complaint is dismissed.

The dispute centers on the way yearbook photographs are produced in the Forest Hills and Windber Area high schools. The production of the yearbook is typically an extracurricular school activity accomplished by students with the assistance and oversight of faculty and administrative personnel, and with professional photographic and printing services obtained for the final product from sources outside the school's physical plant. The defendant school districts, Forest Hills and Windber Area, have obtained photographic services by entering into single year, three-year, or five-year contracts with the defendant photographer, Cover Studios. The contracts provide that Cover Studios will

be the sole supplier[1] of yearbook photographs: if a student wishes to appear in the yearbook, the student must be photographed by Cover Studios. In exchange for this exclusivity, Cover Studios provides at no charge photographs of student activities such as sports events and club activities for inclusion in the yearbook.[2] Sometimes a sitting fee is charged to the student by the photographer, but this is for an amount less than the *production cost of the yearbook photo.*[3]

The value of the exclusive contract to the photographer is the opportunity to sell additional graduation portrait photographs to the student. Historically, the profitability of this market has enabled school districts to keep the costs of yearbook photography, both activity photos and student portraits, lower than they otherwise would be.

Plaintiff does not allege that students are required by the school districts to purchase yearbook photographs, or, if they sit for yearbook photographs, any additional photographs from Cover Studios. At argument, plaintiff's counsel asserted that the *exclusive opportunity* given Cover Studios to photograph the high school student was coercive because the student was face to face with only Cover Studios, whether at the photographer's studio or in a school-based photographic session. It is also reasonable to believe, and none of counsel disputes, that a given student may even be unaware of the distinction between the yearbook photograph and other graduation photographs, or even unaware that the student is not required to buy his or her other graduation photographs from Cover Studios.

Finally, the contracts between Forest Hills and Cover Studios, and between Windber Area and Cover Studios, were not awarded after competitive bidding.[4] Plaintiff's counsel asserted that plaintiff had contacted some faculty yearbook advisors—but *not* school administrators—about providing yearbook photography services and had been told that the unspecified school district was under contract to Cover Studios. Plaintiff does not allege that he has been denied the opportunity to bid on providing photographic services in the future, but at argument asserted that he effectively has been shut out because Cover Studios has "cornered the market," both as to these school districts[5] and as to other unnamed, nonparty school districts.

Plaintiff asserted at argument two general ways in which the facts alleged in his complaint violate federal law: (1) by offering and agreeing that Cover Studios would provide activity photos at no extra charge in exchange for the exclusive opportunity to provide yearbook photographs, Cover Studios

1. In exceptional circumstances which can be disregarded for purposes of this proceeding, photographs from other sources are accepted by the school districts. One of the interests of the school districts advanced by the exclusivity of the source of yearbook photographs is uniformity of appearance.

2. Counsel at argument stated that these "activity photos" have been provided without charge to the school districts in the past as part of the exchange for exclusivity, but that changes in costs made it likely that some additional charge for activity photos would be part of future contracts. The analysis is not changed whichever pricing scheme is in effect.

3. Counsel for Windber Area stated that, in the current contract between Windber and Cover Studies, there was no permission to charge a sitting fee and that if sitting fees were mistakenly obtained from their students they were required to be refunded. Counsel for Forest Hills was not able to state whether a sitting fee was charged. The topic was explored for the Court's understanding of the allegations in the complaint, and the analysis is the same whether or not a sitting fee is charged.

4. At argument, counsel for Windber Area asserted that formerly the school district had advertised for bids, but discontinued that practice because Cover Studios for many years was the only photographer that submitted a bid, and the advertising was therefore a wasteful expenditure. No state law requires the contracts in question to be submitted for bidding. Counsel for plaintiff asserted that that may change if the costs of photography increase in the future above the minimum required by state law for competitive bidding. The antitrust analysis is unaffected by the existence or absence of state law bidding requirements.

5. The school districts raised their immunity from monetary damages pursuant to the Local Government Antitrust Act. 15 U.S.C. § 34, § 35. Plaintiff seeks only monetary relief in his complaint, but suggests that the school districts remain as defendants for purposes of declaratory relief.

and the school districts were restraining trade; and (2) by having exclusive opportunity to photograph students for the yearbook, Cover Studios was able to "coerce" them into buying additional graduation photographs.[6] Plaintiff's complaint asserts that the actions of each school district in entering into a contract with Cover Studios violate Section 1 of the Sherman Act, 15 U.S.C. § 1, because they constitute a conspiracy in restraint of trade, price fixing, and a refusal to deal with the plaintiff. Based on the coercion theory advanced at argument, plaintiff also alleges that these contracts constitute illegal tying of yearbook photographs to the purchase of additional photographs. Plaintiff further claims that Cover Studios has violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by attempting to monopolize the market for photography services to high schools and technical schools in Johnstown.[7]

In determining whether to dismiss an antitrust claim pursuant to Fed.R.Civ.P. 12(b)(6), the district court must accept as true all of the factual allegations of the complaint, but may disregard allegations of legal conclusions without supporting facts. Dismissal is appropriate only if it is clear that from the facts alleged and inferences fairly derived therefrom no claim is stated of an injury resulting from an act forbidden by the antitrust laws. *See Abbott Laboratories v.*

*Brennan*, 952 F.2d 1346, 1354–55 (Fed.Cir. 1991). In considering the inferences which are fairly derived from the allegations of fact, two principles must be kept in mind: first, because the antitrust laws protect competition and not competitors, *Brunswick Corp. v. Pueblo Bowl–O–Mat*, 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977), courts must "carefully scrutinize[ ] enforcement efforts by competitors because their interests are not necessarily congruent with the consumer's stake in competition." *Barr Laboratories, Inc. v. Abbott Laboratories*, 978 F.2d 98, 109 (3d Cir.1992) *quoting Alberta Gas Chems. Ltd. v. E.I. duPont de Nemours & Co.*, 826 F.2d 1235, 1239 (3d Cir.1987), *cert. denied*, 486 U.S. 1059, 108 S.Ct. 2830, 100 L.Ed.2d 930 (1988); second, the lack of any conceivable motivation by the defendant school districts to engage in alleged conduct which is directly adverse to their own interests calls for a careful examination of plaintiff's claims. *See generally Stephen Jay Photography, Ltd. v. Olan Mills, Inc.*, 903 F.2d 988, 994 (4th Cir.1990) (quoting *Matsushita Electric Indust. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

*Section 2 attempted monopoly claim*

Cover Studios'[8] conduct can violate Section 2 of the Sherman Act only if it has:

---

6. I asked plaintiff's counsel what alteration to current practice plaintiff believed would not violate the antitrust laws, and proposed hypothetically (1) banning sitting fees; (2) banning the offer of activity photos as a package with yearbook photographs; or (3) ordering mandatory disclaimers that students were free to obtain graduation photos elsewhere. Although injunctive relief was not requested in the complaint, plaintiff's counsel suggested that the only thing that would cure the alleged violation would be a ban on any requirement that yearbook photos be uniformly supplied, effected by a type of "yearbook fair" in which all interested photographers would have access to the students. Activity photos would either fall by the wayside or have to be purchased by a school district separately.

7. In paragraphs 15 and 19 of his complaint, plaintiff states that the defendants' actions "may also constitute violations of the Clayton Act, section 3 (Robinson Patman Amendment)", if Cover Studios discounted its prices to the school districts. Section 3 of the Clayton Act, 15 U.S.C. § 14, and the Robinson–Patman Antidiscrimination Act, 15 U.S.C. § 13, 13a, 13b, and 21a,

are two distinct statutes. Whichever plaintiff means, he does not affirmatively plead price discrimination between different purchasers, *see* 15 U.S.C. § 13(a), or a sale of "goods," *see Chelson v. Oregonian Publishing Co.*, 715 F.2d 1368, 1372 (9th Cir.1983), and therefore does not state a claim for violation of either statute. Although it is therefore unnecessary to consider the effect of the Nonprofit Institutions Act, 15 U.S.C. § 13c, on the type of contracts at issue, at least one court has taken the position that both Cover Studios and the school districts would be exempt from the Robinson Patman Act. *See Burge v. Bryant Public School District of Saline County*, 520 F.Supp 328, 331–32 (E.D.Ark.1980), *aff'd on other grounds*, 658 F.2d 611 (8th Cir.1981).

8. Plaintiff does not allege facts supporting a claim of a conspiracy to monopolize, but only conduct by a single firm, Cover Studios, in entering into two bilateral agreements with Forest Hills and Windber Area. *See Stephen Jay Photography*, 903 F.2d at 996.

(1) engaged in predatory pricing or similar anticompetitive conduct; (2) a specific intent to monopolize; and (3) a dangerous probability of achieving monopoly power. *Spectrum Sports, Inc. v. McQuillan,* —— U.S. ——, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993). *See also Barr Laboratories,* 978 F.2d 98, 112; *Harold Friedman, Inc. v. Kroger Co.,* 581 F.2d 1068 (3d Cir.1978). Under that legal standard, plaintiff's allegations against Cover Studios are fatally deficient because: (1) contracts with two local school districts cannot as a matter of law constitute a dangerous probability of monopoly power; (2) plaintiff does not allege a specific intent to monopolize; and (3) Cover Studios is not alleged to have engaged in any predatory pricing, commercial bribery, or other anticompetitive conduct.

### Anticompetitive conduct

■ Plaintiff suggested at argument that all exclusive contracts for provision of yearbook services are *per se* anticompetitive. That position flies in the face of commercial reality: school districts, and businesses generally, typically enter into exclusive contracts for the provision of all kinds of services, including legal, accounting, security, plumbing, and maintenance services. Plaintiff does not allege that Cover Studios engaged in predatory pricing, *see Irvin Industries, Inc. v. Goodyear Aerospace Corp.,* 974 F.2d 241, 244 (2d Cir.1992), bribery, or other conduct that has no business justification. It must be emphasized that anticompetitive conduct is conduct designed to eliminate competition, and not just a competitor. *Richter Concrete Corp. v. Hilltop Concrete Corp.,* 691 F.2d 818, 823 (6th Cir.1982).

### Specific intent to monopolize

■ All competition aims to defeat and drive out competitors, and all contracts are by their nature exclusionary. The mere intention to expand one's business at the expense of a competitor is insufficient to support a claim of specific intent to monopolize. *See Great Escape Inc. v. Union City Body Co., Inc.,* 791 F.2d 532, 541 (7th Cir.1986).

Plaintiff alleges no facts from which an intent to monopolize can be inferred.

### Dangerous probability of achieving monopoly power

■ In determining whether the facts alleged by plaintiff could show a dangerous probability of achieving monopoly power it is necessary to consider allegations, if any, concerning the defendant's market share, the strength of competition, the probable development of the industry, barriers to entry, the nature of the anti-competitive conduct and the elasticity of consumer demand, *Barr Laboratories,* 978 F.2d at 112, in the relevant market. Plaintiff only alleges, Complaint, paragraphs 14, 18, that the relevant market is "the photography business as to high schools and technical schools in Johnstown," and that by entering into contracts to photograph students for yearbooks Cover Studios has attempted to monopolize this market. Because plaintiff at argument expressly disclaimed any desire to break into the yearbook photography market due to the unprofitability of producing yearbook photographs, this cannot as a matter of law be the relevant market. The plaintiff's definition of the relevant market as coextensive with the parties to his competitor's contract is also patently invalid because it is tautological. *See Town Sound and Custom Tops v. Chrysler Motors,* 959 F.2d 468, 479 (3d Cir.1992).

■ The relevant market is composed of products that have reasonable interchangeability for the same purpose, after considering price, use, and quality, *see Coleman Motor Co. v. Chrysler Corp.,* 525 F.2d 1338, 1348–49, that is, products which have a high cross-elasticity of demand. *See Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. ——, 112 S.Ct. 2072, 2083–84, 119 L.Ed.2d 265, 285–86 (1992). Plaintiff's interest rather is in the lucrative market segment of other student portrait photography services provided by Cover Studios. This must be considered as the relevant market.

Plaintiff does not allege that Cover Studios is dangerously likely [9] to monopolize the stu-

---

**9.** Given the notoriously low barriers to entry in the commercial photography business and the

participation, which I judicially notice, of several national department store chains in the portrait

dent portrait photography business in the Johnstown area. Plaintiff merely alleges two bilateral contracts.

### Section 1 claims

#### Price fixing and refusal to deal

■ Although plaintiff conclusorily alleges "price fixing by artificial restriction of supply and demand," *see* Complaint, paragraphs 12, 16, he does not allege any facts which would allow the conclusion that Cover Studios in contracts with either of the school districts had "fixed prices" in the sense meant in antitrust law. *See Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990); *United States v. Gillen*, 599 F.2d 541 (3d Cir.), *cert. denied*, 444 U.S. 866, 100 S.Ct. 137, 62 L.Ed.2d 89 (1979); *Adolph Coors Co. v. Federal Trade Comm.*, 497 F.2d 1178 (10th Cir.1974), *cert. denied*, 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975). Of course, most contracts set a fixed price for goods and services and refuse to deal with others, but unless semantic gamesmanship is allowed free rein, plaintiff's allegations of fact do not state either of these per se violations of Section 1 of the Sherman Act. *See Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473, 478 (7th Cir.1988). Plaintiff does not allege that he is restricted from offering portrait photograph services to any student, or even from bidding on yearbook photography business. At most, plaintiff relies on the contention he raised at argument that he feels Cover Studios has "cornered the market." This is a frivolous (and perhaps sanctionable) basis on which to found an antitrust claim.

#### Conspiracy in restraint of trade

■ An allegation of concerted activity is an essential element of a Section 1 conspiracy claim. *Stephen Jay Photography, Ltd.*, 903 F.2d at 994. Plaintiff alleges no conspiracy, but instead characterizes each bilateral contract of Cover Studios with Forest Hills and with Windber Area as a "conspiracy and/or agreement." Complaint paragraphs 8–12, 16, 20. Under Wharton's Rule, conduct such as contract formation which

photography business, even if Cover Studios' market share approached 100% it is doubtful that it could achieve legal monopoly power.

necessarily requires two parties cannot as a matter of law constitute a conspiracy. Nor has plaintiff "explained to the district court how the contracts operated to restrain trade," *Stephen Jay Photography Ltd.*, 903 F.2d at 995, nor alleged any facts in support of that conclusory assertion. *See Fuentes v. South Hills Cardiology*, 946 F.2d 196, 201–02 (3d Cir.1991) (general allegation of conspiracy without a statement of facts is an allegation of a legal conclusion). As stated above, the only facts pleaded from which the conclusion of a restraint of trade is argued are Cover Studios' bilateral contracts with two school districts.

### Tying claim

■ Plaintiff's final *per se* Section 1 claim is that defendant Cover Studios has illegally tied the purchase of student portraits to the provision of yearbook photographs. Even as amplified at argument, plaintiff's complaint does not allege that any legal compulsion is exerted on the students to buy the allegedly tied product. *See Stephen Jay Photography, Ltd*, 903 F.2d at 991. Nor did plaintiff allege that students were sold yearbook photographs only if they bought an additional product. Plaintiff did not, even at argument, allege that Cover Studios was misrepresenting to students that they were not free to purchase portraits elsewhere. Plaintiff's sole basis for assertion of a tying claim is based on the advantage Cover Studios has in marketing other portrait services because it has contact with the students during the yearbook photographing session. If this is product tying, then so are all sales promotions by merchants, because they attempt to get customers in the door in the hope they will buy products not on sale as well. The psychojurisprudence of coercion has no relevance in the field of antitrust law. *See Town Sound and Custom Tops*, 959 F.2d at 489–90 (antitrust liability does not attach in competitive market based on even a tying seller's failure to inform lazy consumers of implicit subprices of tied products).

Plaintiff cannot be allowed to allege that success in business is equivalent to monopoly behavior, whatever may be the lay perception of that term.

894

*Rule of reason claims*

As stated above, plaintiff's factual allegation that Cover Studios has entered into two contracts for provision of yearbook photography services wholly fails to equate to an allegation that it has sufficient market power to restrain trade in portrait photography in violation of Section 1.[10]

In light of the absence of allegation that plaintiff is being restrained from competing in the portrait photography market, there is no reasonable possibility that plaintiff states a claim of injury "of the type the antitrust laws [are] designed to prevent." *Town Sound and Custom Tops,* 959 F.2d at 495. Because plaintiff's sole factual allegation regarding the effect on the relevant market for student portrait photographs is the allegation advanced at argument that students may feel in some sense coerced to buy portrait photographs from Cover Studios rather than from plaintiff, plaintiff fails to allege any *anticompetitive* effects of defendants' actions.[11] His complaint must therefore be dismissed. *See Banks v. NCAA,* 977 F.2d 1081, 1086–87 (7th Cir.1992).

*Conclusion*

Litigation is expensive, and federal antitrust litigation is doubly so. A disappointed competitor can use the threat of even frivolous litigation to attempt to extract unmerited concessions from a successful competitor. When a disappointed competitor does so by alleging that its injury consists of "lost profits [from] being forced to lower prices," Complaint, paragraph 22, and seeks treble damages but not injunctive relief against the practice complained of, there is every reason to suspect that it is a less than candid champion of the free market.

The complaint is dismissed with prejudice.

---

10. And *a fortiori*, plaintiff fails to allege Cover Studios' monopoly power under Section 2. *See Eastman Kodak Co.,* 504 U.S. at ——, 112 S.Ct. at 2089–90, 119 L.Ed.2d at 293.

11. Plaintiff's allegation that students were required to accept the services of Cover Studios was simply a restatement of his coercion theory, and the allegation that Cover Studios' prices were arbitrarily set is wholly insufficient to state an antitrust claim. *See ARCO v. USA Petroleum,* 495 U.S. 328, 335–39, 110 S.Ct. 1884, 1888–90, 109 L.Ed.2d 333 (1990).