**UNITED STATES of America, Petitioner,**

v.

**109,980.00, MORE OR LESS, IN UNITED STATES CURRENCY; and Cashier's Check # 2165306 of $90,000.00, More or Less, in United States Currency, Respondent.**

No. SA–06–CV–00253–RF.

United States District Court, W.D. Texas, San Antonio Division.

Feb. 26, 2008.

---

Diana Cruz-Zapata, U.S. Attorney's Office, San Antonio, TX, for Petitioner.

## ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT

ROYAL FURGESON, District Judge.

BEFORE THE COURT is Petitioner United States of America's (the "Government") Motion for Summary Judgment (Docket No. 23); Claimant Mohamed Ahmad Salameh's ("Claimant") Response (Docket No. 25); the Government's Reply (Docket No. 26); Claimant's Supplemental Response (Docket No. 35); and the Government's Reply (Docket No. 36). The parties appeared before the Court at a hearing on January 9, 2008. After considering the parties' briefing, the facts of the case, and the parties' arguments at the hearing, the Court is of the opinion Petitioner's Motion for Summary Judgment should be GRANTED.

## FACTUAL AND PROCEDURAL BACKGROUND

*Factual Background*

This is a civil forfeiture suit that involves the forfeiture of Claimant's cashier's check, in the amount of $90,000.00, to the Government. In April, 2004, the Federal Bureau of Investigation ("FBI") and Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") began to investigate an allegedly ongoing criminal enterprise that involved the purchase, distribution, and resale of contraband cigarettes with counterfeit Texas state stamps affixed to them.[1] The Government initiated an undercover operation to monitor numerous transactions involving the purchase of the contraband cigarettes. Eventually, Ziad Mahmoud Alsalameh ("Alsalameh"), Farouk Ibrahim Abulaban ("Abulaban"), and Madhat Orabi ("Orabi"), (collectively, "Alsalameh et al.") were indicted in the Western District of Texas–San Antonio Division, for criminal violations of 18 U.S.C. §§ 371, 2342(a), 2024(b), and 473.[2] Claim-

---

1. Petr.'s Mot. for Summary Judgment (Docket No. 23) at 3.

2. Petr.'s Verified Complaint for Forfeiture (Docket No. 1) at 3–4.

ant is the brother of Alsalameh and was not indicted in the criminal case.[3]

The Government describes several transactions and meetings that occurred between the Cooperating Source/undercover agent and Alsalameh et al, some of which, involved Claimant.[4] Relevant to the instant forfeiture action are the events that occurred on September 28 and September 29, 2005. On or about September 28, 2005, a Cooperating Source and/or undercover agent made arrangements with Alsalameh et al. for the exchange of counterfeit cigarettes to take place the following day. Alsalameh et al. told the undercover agent that $109,980.00, more or less, in U.S. currency, and a cashier's check in the amount of $90,000.00, more or less, would be exchanged for purchase of the cigarettes.[5] During the meeting, the cashier's check was discussed in detail. The check was to be a cashier's check the amount was to be $90,000.00, and the check was to be made payable to Billy Bob's Mattresses.[6] The parties dispute Claimant's presence at the September 28, 2005 meeting.[7]

On the following day, September 29, 2005, Claimant and Alsalameh met with the Cooperating Source and ATF Special Agent J.D. Brigance at Billy Bob's Mattresses.[8] During the meeting, Alsalameh retrieved a plastic bag from his trunk and handed a bag to the undercover agent. The bag contained the $ 109,980.00 in U.S. currency and a cashier's check in the amount of $90,000.00 ("Claimant's check"), purchased by Claimant.[9] Alsalameh et al. were arrested at that time and Claimant's check, along with the currency, was seized by the Government.[10] Claimant was not arrested, nor was he subsequently charged with any state or federal law violation.[11]

Per the Court's instructions at the January 9, 2008 hearing, Claimant submitted additional briefing regarding his assertion that the check was to be used to fund his business endeavor of opening a mattress store. Claimant explains he was present on September 29, 2005, in order to buy bedding and mattresses and took no part in the purchase of contraband cigarettes.[12] He explains he had recently left his home in Germany to visit relatives in the United

---

**3.** Petr.'s Mot. for Summary Judgment (Docket No. 23) at 4.

**4.** *See* Petr.'s Mot. for Summary Judgment (Docket No. 23).

**5.** Petr.'s Verified Complaint for Forfeiture (Docket No. 1) at 4. Claimant does not dispute this meeting occurred; nor does he dispute the Government's contention that several transactions involving the purchase of contraband cigarettes by Alsalameh et al. occurred. Instead Claimant argues he was not a participant in those transactions.

**6.** Petr.'s Reply (Docket No. 26) at 3–4.

**7.** The Government contends Claimant was present during this meeting. Claimant asserts there is no allegation or evidence that Claimant "had anything to do with, was present, or in any way cognizant of the alleged conversation concerning a/'the' check between Ziad Alsalameh and the Confidential

Agent on Setpember 28, 2005 ...." Claimant's Response (Docket No. 25) at 2.

**8.** The "front" operation for the Government undercover informants was a wholesale bedding and mattress warehouse store named "Billy Bob's Mattresses."

**9.** Petr.'s Mot. for Summary Judgment (Docket No. 23) at 7. Claimant's name appears as the purchaser on the cashier's check, which is dated September 28, 2005. The check is endorsed to Billy Bob Mattresses. *See* Affidavit of Special Agent Brigance (Docket No. 24), App. A.

**10.** Petr.'s Verified Complaint for Forfeiture (Docket No. 1) at 5.

**11.** Claimant's Supp. Response (Docket No. 35) at 2.

**12.** Claimant's Response (Docket No. 25) at 3.

States.[13] He planned to purchase mattress stock in San Antonio and open a mattress store in Houston.[14] According to Claimant, there were men in San Antonio who offered to help him set up his business but asked to see his money before any further discussions about the business.[15] As a result, Plaintiff drew the $90,000 check, made it payable to the mattress company, and traveled with Alsalameh to San Antonio in order "to select the stock and so forth which [he] wanted, and to take them [the San Antonio men who offered to help with his business] up on their offer."[16] He further explains that he did not know of any illegal business and was not aware that his brother was partaking in other business.[17]

*Procedural Background*

On March 21, 2006, the Government filed the instant complaint for forfeiture against Claimant's check-cashier's check No. 2165306 in the amount of $90,000.00, more or less, in United States Currency.[18] This civil forfeiture suit is an *in rem* proceeding to enforce violations of 18 U.S.C. § 2342(a), and subject to forfeiture pursuant to 18 U.S.C. § 981. In support of its forfeiture action, the Government contends Claimant's Check was used to purchase contraband cigarettes with counterfeit Texas state tax stamps affixed to it, a violation of 18 U.S.C. § 2342(a).

## STANDARD OF REVIEW

The Government has moved for summary judgment. Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[19] The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record, if any, which it believes demonstrate the absence of a genuine issue of material fact.[20] A material fact is one that might affect the outcome of the suit under governing law.[21] A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[22] The moving party, however, need not negate the elements of the nonmovant's case.[23]

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the plead-

13. Claimant's Supp. Response (Docket No. 35) at 7.

14. *Id.* at 8.

15. *Id*

16. *Id.*

17. *Id.* at 8–9.

18. *See* Petr.'s Verified Complaint for Forfeiture (Docket No. 1).

19. Fed.R.Civ.P. 56(c).

20. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir.1999); *Marshall v. E. Carroll Parish Hosp. Serv. Dist.,* 134 F.3d 319, 321 (5th Cir.1998); *Wenner v. Tex. Lottery Comm'n,* 123 F.3d 321, 324 (5th Cir.1997), *cert. denied,* 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998).

21. *See Burgos v. Sw. Bell Tel. Co.,* 20 F.3d 633, 635 (5th Cir.1994).

22. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

23. *See Wallace v. Tex. Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996) (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)).

ings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial.[24] "[T]he court must review the record 'taken as a whole.' "[25] All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes."[26] "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[27] The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts."[28]

## DISCUSSION

After reviewing the evidence, the Court finds that no genuine issue of fact exists in the instant case. The Government argues Claimant's check is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1), because it was involved in a violation under 18 U.S.C. § 2342(a).[29] 18 U.S.C. § 981 is the civil forfeiture statute and it provides that

real or personal property, involved in various transactions or attempted transactions, is subject to forfeiture to the United States.

In the instant case, the Government alleges Claimant's check was used to purchase contraband cigarettes in violation of 18 U.S.C. § 2342(a), which states:

> It shall be unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco.

18 U.S.C. § 2344(c) provides that the provisions of 18 U.S.C. § 981 extend to violations under 18 U.S.C. § 2341 *et seq.*, and therefore allows the Government to seize and forfeit cigarettes in violation of 18 U.S.C. § 2342(a) above.[30]

However, pursuant to 18 U.S.C. § 983(c)(1), the Government must prove by a preponderance of the evidence that Claimant's check is subject to forfeiture to the United States. In cases where the property was involved in a criminal offense, such as the case at hand, the Gov-

---

24. *See Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

25. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348).

26. *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir.1996) (citing *Lindsey v. Prive Corp.*, 987 F.2d 324, 327 n. 14 (5th Cir.1993)); *Messer v. Meno,* 130 F.3d 130, 134 (5th Cir.1997), *cert. denied,* 525 U.S. 1067, 119 S.Ct. 794, 142 L.Ed.2d 657 (1999).

27. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990); *see Christopher Vill. Ltd. P'ship v. Retsinas,* 190 F.3d 310, 314 (5th Cir.1999); *Samuel v. Holmes,* 138 F.3d 173, 176 (5th Cir.1998).

28. *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir.1999); *accord Little,* 37 F.3d at 1075 ("[w]e do not ... in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.") (citing *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

29. Petr.'s Mot. for Summary Judgment (Docket No. 23) at 12.

30. 18 U.S.C. § 2344(c) states that the provisions of Chapter 46 of Title 18 (including 18 U.S.C. § 981 referenced above) relating to civil forfeitures extend to 18 U.S.C. § 2341 et seq. Therefore, the Court can apply the provisions of § 981 to § 2342(a). *See U.S.A. v. Mastercases of Cigarettes,* 448 F.3d 1168, 1184 (9th Cir.2006).

ernment must establish a "substantial connection" between the property and the offense.[31]

Once the Government establishes the property in question is subject to forfeiture, the claimant must establish by a preponderance of evidence that he or she is an innocent owner.[32] An innocent owner's interest in property is not forfeited under any civil forfeiture statute.[33] To establish this defense, a claimant must prove (1) he did not know of the conduct giving rise to the forfeiture; or (2) upon learning of the conduct giving rise to the forfeiture, he did all that could reasonably be expected under the circumstances to terminate such use of the property.[34]

The Government has met its burden in proving a substantial connection between Claimant's check and the criminal activity in violation Of 18 U.S.C. 2342(a). The Government provides an affidavit by Special Agent Brigance stating that Claimant's check was used to purchase the contraband cigarettes.[35] A copy of the check is included in the record.[36] Furthermore, it does not appear Claimant disputes this point.

Since the Government has satisfied its burden to prove a substantial connection exists, the burden shifts to Claimant to prove by a preponderance of the evidence that he is an innocent owner or he did all that could reasonably be expected under the circumstances to terminate such use of the property. Claimant asserts there is a genuine issue of fact as to whether Claimant knew of and consented to Alsalameh (Claimant's brother) using Claimant's check in the underlying criminal transaction.

Claimant relies on the "innocent owner" defense and contends he did not know of the conduct giving rise to the forfeiture and was not present during previous transactions between the Confidential Source and Alsalameh et al., including the meeting on September 28, 2005. He explains the source of the $90,000.00 cashier's check was the sale of his restaurant in Germany and family land owned in Jordan.[37] Furthermore, he claims he was present on September 29, 2005 in order to purchase bedding at Billy Bob's mattresses.

To substantiate this argument, Claimant asserts he "was not really comprehending what was going on" because he "spoke very little or effectively no English at the time of the alleged underlying criminal offense."[38] Claimant also contends that while the other participants were discussing cigarettes and other related information, he left their presence to look at wholesale mattress stock elsewhere in the mattress store.[39] Thus, he was not party to any illicit dealings.

The Court finds Claimant's argument unconvincing and is of the opinion Claimant has not met his burden of establishing he is an innocent owner by a preponderance of the evidence. Even after reviewing Claimant's supplemental evidence submitted per the Court's request at the January hearing, the Court finds the evidence is insufficient to support

---

31. *See* 18 U.S.C. § 983(c)(3) (2001).

32. *Id.* § 983(d)(1).

33. *Id.*

34. *Id.* § 983(d)(2)(A) (i & ii).

35. Petr.'s Mot. for Summary Judgment (Docket No. 23) at 10.

36. *See* Affidavit of Special Agent Brigance (Docket No. 24) at 7, App. A.

37. Claimant's Response (Docket No. 25) at 2.

38. *Id.* at 2–3.

39. *Id.* at 5.

Claimant's claim. Claimant's purported reason for possessing the cashier's check payable to Billy Bob's Mattresses is that he intended to open a mattress store in Houston. His evidence consists of his statements that he met unidentified men in San Antonio who offered to set up Claimant's mattress business. However, he provides no evidence of this other than his statement. He also claims he intended to use a food storage facility attached to his brothers' warehouse in Houston to store the mattress stock. As evidence, he provides copies of two commercial leases for a convenience store, presumably leased to Claimant's brothers. The lease mentions nothing about mattress stock, and in fact, states that the premises "shall be used for no other purpose" than a convenience store.[40] There are no affidavits from Claimant's brothers to substantiate this claim. Claimant also asserts he intended to use his cousin's truck to transfer the $90,000 lots of mattresses and box springs, but offers no evidence to prove the same.

As the Government points out, Claimant also fails to provide identification of the San Antonio "men" who offered to set up his business; a business agreement or proposal of any kind; proof that he registered the business with the Secretary of State; proof that he applied for an assumed name or that he opened a bank account for his business; an explanation as to why he sought to purchase mattress stock in San Antonio and drive the stock to Houston where he planned to open his business; evidence that Claimant knew how to operate a mattress business; and proof that he had secured the proper license(s) or visa to operate a business in the United States.[41]

Furthermore, although the transcript provided by the Government does not speak to Claimant's knowledge about the events that took place on September 29, 2005, it reveals Claimant had some knowledge of Alsalameh's actions with regard to the purchase of contraband cigarettes. Significantly, in a conversation on August 18, 2005, Alsalameh answers "tobacco" to Claimant's question, "What?," and shortly thereafter Alsalameh follows with the statement "Yes, they will sell it, they will sell it [unintelligible] bring me 200 and I will put the 100,000 remaining together." This is followed by Alsalameh's explanation of the term "counterfeiting" to Claimant after the Special Agent mentions counterfeiting.

After reviewing the record as a whole, and construing the evidence in the light most favorable to Claimant, the Court concludes Claimant's affirmative evidence does not create a genuine issue of material fact as to whether or not Claimant's check is subject to forfeiture. Claimant simply provides conclusory assertions that his possession of a cashier's check made out to Billy Bob's Mattresses in the amount of exactly $90,000—just as Alsalameh had told the undercover agent on September 28, 2005—was to purchase previously unselected mattress stock. For the Court to construe Claimant's possession of the check as merely coincidental and innocent in light of Alsalameh's specific statements about the check would require the Court to turn a blind eye to the summary judgment evidence. Consequently, the Court concludes Claimant has failed to meet his burden of establishing the innocent owner defense.

## CONCLUSION

For the foregoing reasons, the Court finds there is no genuine issue of material

---

**40.** Claimant's Supp. Response (Docket No. 35), Exhs. H & I.

**41.** *See* Petr.'s Reply (Docket No. 36).

fact as to whether or not Claimant's check is subject to forfeiture. The Government has satisfied its burden of establishing a substantial connection between Claimant's check and the underlying offense. Claimant failed to meet his burden in establishing the innocent owner defense. Accordingly, the Government's Motion for Summary Judgment (Docket No. 23) is GRANTED.

It is so ORDERED.